# EXHIBIT A

John Heenan
Colette B. Davies
BISHOP & HEENAN
1631 Zimmerman Trail
Billings, Montana 59102
Telephone: (406) 839-9091
john@bishopandheenan.com
colette@bishopandheenan.com

CLERK OF THE
DISTRICT COURT
KRISTIE LEE BOELTER

2015 APR 24 AM 9 36

FILED

BY _____
DEPUTY

Attorneys for Plaintiffs

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

| | |
|---|---|
| PETER BYORTH and ANN McKEAN, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>USAA CASUALTY INS. CO. and JOHN DOES I-X,<br><br>Defendants. | Cause No.: **D V  1 5 - 0 5 1 1**<br><br>Judge: **GREGORY R. TODD**<br><br>**COMPLAINT AND JURY DEMAND**<br><br>*PUTATIVE CLASS ACTION* |

COMES NOW Plaintiffs, by and through the undersigned, and for their Complaint, state and allege as follows:

### SUMMARY OF CASE

1. Defendant USAA Casualty Ins. Co. ("USAA") has and does engage in an improper cost containment scheme designed to wrongfully deprive Montana consumers of their first-party medical pay benefits. This action seeks to remedy

USAA's misconduct and enjoin it from continuing to perpetrate this scheme against Montana insurance consumers.

## PARTIES AND JURISDICTION

2.      Plaintiffs Peter Byorth and Ann McKean were at all times relevant hereto a resident of Yellowstone County, Montana who made premium payments to USAA in exchange for first-party medical pay coverage.

3.      At all times material hereto, Defendant USAA was a foreign insurer engaged in the insurance business in the State of Montana.

## FACTUAL BACKGROUND

4.      USAA specifically targets and markets to American servicemembers and their families for the purpose of selling products including insurance products. USAA represents to these servicemen and servicewomen and their families that it is committed to taking care of and supporting them and their families, and touts that "[w]hen you join USAA, you become part of a family that's there for you every stage of your life."

5.      Plaintiff Peter Byorth had med pay coverage with USAA at all times material hereto.

6.      On September 25, 2011, Mr. Byorth was seriously injured when he was struck by a motor vehicle while riding his bicycle. At the time of his injury, Mr. Byorth had $10,000 in first-party med pay coverage through USAA. Mr. Byorth

incurred over $85,000 in medical bills. Mr. Byorth timely submitted proof of loss,
proof of treatment, and copies of his medical bills to his insurer USAA in connection
with the accident.

7.     USAA, in turn, referred Mr. Byorth's claim to Auto Injury Solutions
("AIS") for "file reviews" without disclosing that USAA held a relationship with
AIS to prepare "file reviews" which would uniformly conclude that medical
treatment was not necessary. AIS's sham "file reviews" in Mr. Byorth's case were
used as the basis for USAA to deny Mr. Byorth's med pay benefits. For example,
USAA claimed that Mr. Byorth's spinal fusion surgery was not medically necessary
in spite of the clear medical evidence and the unequivocal position of Mr. Byorth's
treating physicians.

8.     USAA created artificial barriers and obstacles for its insureds to prevent
them from collecting their med pay benefits. Specifically, USAA repeatedly denied
Mr. Byorth's med pay benefits on the basis of "coding errors" even though the
medical records associated with the bills clearly showed the bills were related to the
subject accident.

9.     USAA caused Mr. Byorth damages by wrongfully handling his med
pay coverage claim including, but not limited to, delaying timely payment of
benefits, delaying recovery of his medical treatment, forcing him to retain counsel
to get the claim paid and incur legal fees.

PAGE 3

10.    Plaintiff Ann McKean had med pay coverage with USAA at all times material hereto.

11.    On February 10, 2014, Ms. McKean was seriously injured in a motor vehicle accident.  At the time of her injury, Ms. McKean had $10,000 in med pay coverage through USAA.  Ms. McKean has incurred over $10,000 in medical bills as a consequence of her injury.  Ms. McKean timely submitted proof of loss, proof of treatment, and copies of her medical bills in connection with the accident.

12.    USAA, in turn, referred Ms. McKean's claim to AIS for "file reviews" without disclosing that USAA held a relationship with AIS to prepare "file reviews" which would uniformly conclude that medical treatment was not necessary.  AIS's sham "file reviews" in Ms. McKean's case were used as the basis for USAA to deny Ms. McKean's med pay benefits.  USAA's claim that Ms. McKean's treatment was not medically necessary came in spite of the clear medical evidence and the unequivocal position of Ms. McKean's treating physician.

13.    USAA caused Ms. McKean damages by wrongfully handling her med pay coverage claim including, but not limited to, wrongfully delaying and denying timely payment of benefits, delaying recovery of her medical treatment, and forcing her to retain counsel to get the claim paid.

## COUNT I – BREACH OF FIDUCIARY DUTY

14.    Plaintiffs incorporate by reference all prior allegations.

15.    Defendant owed Plaintiffs and the Class fiduciary duties.

16.    Defendant breached its fiduciary duties by wrongfully delaying and/or denying Plaintiffs and the Class their med pay benefits under the insurance policy.

17.    As a result of Defendants' breaches, Plaintiffs and the Class have been injured and are entitled to damages.

## COUNT II – BREACH OF CONTRACT

18.    Plaintiffs incorporate by reference all prior allegations.

19.    Plaintiffs and the Class on one hand and USAA on the other hand entered written insurance contracts.

20.    Pursuant to the contracts, in exchange for premium payments, USAA implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of first-party med pay benefits.

21.    USAA breached the contracts by wrongfully delaying and/or denying med pay claims, thus causing Plaintiffs and the Class damages.

## COUNT III – UNFAIR TRADE PRACTICES

22.    Plaintiffs incorporate by reference all prior allegations.

23.    At all times relevant to this Complaint, USAA had the duty to understand and apply the terms of its insurance policies in accordance with, and as required by, well-established principles applicable to the insurance industry.

Specifically, USAA knew it must pay med pay benefits to its insureds in accordance with the plain language and requirements of its insurance policies.

24. USAA also had the duty to handle its insureds' claims arising under its med pay policies in accordance with standards applicable to the insurance industry and made mandatory by Montana's Unfair Trade Practices Act, Section 33-18-201, M.C.A., pursuant to which it is unlawful and a prohibited practice to: (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue; (2) fail to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; (7) compel insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds.

25. USAA has violated subparagraphs (1), (2), (4), (6) and (7) of the Montana Unfair Trade Practices Act, Section 33-18-201, M.C.A. ("MUTPA") by engaging in a pattern and practice of wrongfully denying med pay claims on the basis of sham AIS "file reviews" and erroneous "coding errors", thus causing

Plaintiffs and the Class to suffer injury, harm and loss, giving rise to a general tort action in favor of Plaintiffs pursuant to Section 33-18-242, M.C.A.

## COUNT IV – PUNITIVE DAMAGES

26. USAA's conduct towards Plaintiffs and the Class constitutes fraud and/or malice as defined by Montana law for purposes of the imposition of punitive damages.

## CLASS ALLEGATIONS

27. Plaintiffs bring this action on their own behalf and on behalf of a class of persons similarly situated pursuant to Rule 23, Montana Rules of Civil Procedure.

28. The class is comprised of all persons who satisfy the following criteria: (a) all Montana consumers who (b) were insured by USAA for med pay benefits and (c) who submitted a claim for med pay benefits within the applicable statute of limitations, and (d) had their claim wrongfully denied in whole or in part following a "file review" by AIS or because of an asserted "coding error."

29. The class is believed to be so numerous that joinder of all members is impracticable. The Complaint concerns a routine insurance claims practice as set forth above. There are common questions of law or fact common to the class. These include whether or not USAA violated Montana law with respect to its med pay claims handling practices. The claims of Plaintiffs are typical of those of the class. All of Plaintiffs' claims are based upon the same factual and legal theories.

30.    Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interest antagonistic to those of the class. Plaintiffs' counsel is competent and experienced in consumer class actions and insurance litigation.

31.    USAA has acted on grounds generally applicable to the class, thereby making final relief and declaratory relief appropriate with respect to the class as a whole.

32.    The questions of law and fact common to the class predominate over any question affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The class members are consumers who may be unable to locate or afford attorneys. Most are probably unaware that their rights under Montana law have been violated. The amounts of actual damages per consumer, while not insignificant to a consumer, are generally small, and thus a consumer class action is particularly well-suited to address violations and for recovery by the class.

33.    The class may be certified under Rule 23(b)(3), Mont. R. Civ. P., as such represents a superior method for the fair and efficient adjudication of this controversy in that:

(a)    Most of the class members are not aware of their rights and have no knowledge that their rights have been violated.

(b)     The interest of class members individually controlling the prosecution of separate claims is small because of the limited damages per consumer.

(c)     Management of this class action is not likely to present significant difficulties.

(d)     Defendant acted on grounds generally applicable to the class thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

(e)     Certification of a class under Rule 23 of the Montana Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

34.     Plaintiffs request certification of a class action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class, respectfully requests the following relief against Defendant:

a.      This Court certify the class and appoint Plaintiffs class representative and their attorneys as class counsel.

b.      Actual damages, statutory damages, exemplary/punitive damages, costs and attorney's fees.

c.      For an order of disgorgement and/or restitution.

d.     For pre-judgment interest to the extent permitted by law.

e.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all claims.

Dated this _22_ day of April, 2015.

BISHOP & HEENAN

John Heenan
Colette B. Davies
Attorney for Plaintiffs